## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-21719-CIV-ALTONAGA/Goodman

**JOHN RAFFELL**, *et al.*,

      Plaintiffs,

v.

**SCOTTSDALE INSURANCE COMPANY**,

      Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendant, Scottsdale Insurance Company's Motion for Summary Judgment [ECF No. 47], filed on November 17, 2020.  Plaintiffs, John Raffell[1] ("Raffell"), Jesus Lastra, and Teresa Lastra filed a Response in Opposition [ECF No. 58] with supporting exhibits (*see* [ECF Nos. 58-1–58-5]); to which Defendant filed a Reply [ECF No. 63].  The Court has carefully considered the Complaint, the parties' written submissions,[2] the record, and applicable law.  For the following reasons, the Motion is granted.

### I.  BACKGROUND

This case involves a property insurance dispute between Plaintiffs and Defendant.  (*See*

---

[1] Although this is the spelling used in the Complaint (*see* [ECF No. 1-2] 5–10) and thus controls the case caption, it appears Plaintiff's name is spelled "Raffel."  For the sake of consistency, the Court uses the spelling "Raffell" because that is how the name appears in the Complaint's caption.

[2]  The parties' factual submissions include: Defendant's Statement of Material Facts Relied Upon by Defendant in Its Motion for Summary Judgment ("Def.'s SOF") [ECF No. 50] with supporting exhibits (*see* [ECF Nos. 48-1–48-7, 49-1]); Plaintiffs' Amended Response to Defendant's Statement of Undisputed Facts in Support of Plaintiff's [sic] Response . . . in Opposition to Defendant's Motion for Final Summary Judgment ("Pls.' Resp. SOF") (*see* [ECF No. 65-1] 1–5) and Plaintiffs' Amended Additional Facts in Support of Plaintiff's [sic] Response . . . in Opposition to Defendant's Motion for Final Summary Judgement ("Pls.' SOF") (*see id.* 5–6) with supporting exhibits (*see* [ECF Nos. 65-2–65-6]); and Defendant's Reply Statement of Material Facts . . . ("Def.'s Reply SOF") [ECF No. 64].

*generally* Compl.).   Plaintiffs are residents of Miami-Dade County, Florida.   (*See id.* ¶ 2).

Defendant, an Ohio corporation with its principal place of business in Arizona, provides property

insurance coverage to Florida property owners.   (*See id.* ¶¶ 3, 7; Notice of Removal [ECF No. 1]

¶ 3).

     ***The facts***.   Defendant issued an insurance policy (the "Policy") to Plaintiffs, covering their

property located at 2150 S.W. 21st Avenue, in Miami, Florida (the "Property").   (*See* Compl. ¶ 7).

The Property was covered by the Policy from October 1, 2019 until October 1, 2020.   (*See* Policy

[ECF No. 48-1] 4).[3]

     On November 9, 2019, Raffell observed a discharge or overflow of water from the

Property's plumbing system.   (*See* Pls.' SOF ¶¶ 31–32; Decl. of Raffell ("Raffell Decl.") [ECF

No. 65-5] ¶¶ 4–7).   The discharge or overflow of water occurred suddenly, accidentally, and

without warning.   (*See* Pls.' SOF ¶ 32; Raffell Decl. ¶ 6).   The water damaged the interior of the

Property.   (*See* Def.'s SOF ¶¶ 6, 15; Pls.' Resp. SOF ¶¶ 6, 15).   The water damage resulted from

"the failed cast iron plumbing system, on the residence premises, from the breaking apart or

cracking of the premises' plumbing system due to age-related deterioration."   (Pls.' SOF ¶ 35; *see

also* Def.'s Reply SOF ¶ 35).

     On November 19, 2019, Plaintiffs filed an insurance claim with Defendant for the Property

damage.   (*See* Def.'s SOF ¶ 4; Pls.' Resp. SOF ¶ 4).   Plaintiffs sought coverage for damage caused

by the Property's deteriorated plumbing system, which allowed water to escape the plumbing

system and wastewater backups, resulting in significant water damage to the Property.   (*See* Def.'s

SOF ¶¶ 6–7; Pls.' Resp. SOF ¶¶ 6–7; Pls.' SOF ¶¶ 30–32).

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers
of all court filings.  Citations to deposition testimony rely on the pagination and line numbering in the
original document.

CASE NO. 20-21719-CIV-ALTONAGA/Goodman

Defendant sent field adjuster, Rick Honeycutt, to investigate the claim and inspect the Property. (*See* Def.'s SOF ¶ 7). Following the inspection and investigation, Defendant denied coverage, writing:

> [A] field adjuster [] complete[d] an inspection of the [] Property, at which time the adjuster observed minimal damage to the Property, and also observed that all such damage, including mold damage, did not first occur on or about November 9, 201[9], but instead existed long before November 9, 201[9] and resulted only from one or more overflow events from the sewer at the Property. The [Policy] excludes coverage for damage caused by sewer overflows and discharges, as well as damage caused by wear and tear, deterioration, corrosion, and mold. In addition, the [Policy] only affords coverage for the cost to tear out and replace part of the building or structure to access plumbing to make repairs when the building has suffered covered water damage, which did not occur.
>
> *            *            *
>
> Underground pipes are not covered, regardless of the cause of any damage. Excavating and paved surfaces are also not covered under the [P]olicy. The [P]olicy also excludes from coverage damage caused by wear and tear, deterioration, corrosion, and overflow or discharge from sewers and drains. Furthermore, the [P]olicy does not provide coverage to repair any defect in any system from which water escapes. The [P]olicy also does not provide any coverage for mold damage or damage caused by mold. Accordingly, no covered loss under the Policy occurred, and as a result there is no coverage to tear out any of the building components to repair the system that the insureds claim was damaged.
>
> Unfortunately, [Defendant] will not be able to make any payment on the subject claim.

(June 16, 2020 Correspondence [ECF No. 48-3] 1, 7 (alterations added)).

***The Policy***. The Policy states that Defendant will pay "for direct physical loss of or damage to [the] Property . . . caused by or resulting from any Covered Cause of Loss." (Policy 15 (alterations added)). Covered Cause of Loss means direct physical loss to the Property unless the loss is excluded or limited by the Policy. (*See id.* 34). Generally, "loss[es] or damage[s] caused by or resulting from . . . [w]ear and tear" or "[r]ust or other corrosion, decay, [or] deterioration" are excluded. (*Id.* 36 (alterations added)). This exclusion contains an exception for losses or damages resulting in a "specified cause of loss." (*Id.* (quotation marks omitted)).

In the Policy's "Definitions" section, "[s]pecified causes of loss" is defined, in part, as "water damage."  (*Id.* 43 (alteration added; bold and quotation marks omitted)).  "Water damage" is then defined as:

> (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing . . . system . . . that is located on the described premises and contains water or steam; and

> (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

> But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion.[4] . . .

> To the extent that accidental discharge or leakage of water falls within the criteria set forth in [](1) or [](2) of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

(*Id.* 43 (alterations added)).

The Policy's Causes of Loss Special Form delineates the various causes of loss that are excluded from coverage under the Policy.  (*See id.* 34).  Section B.1.g. of the Policy's Causes of Loss Special Form lists five excluded causes of loss related to water damage:

> 1. [Defendant] will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

> . . . .

> g. Water

> > (1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

---

[4] The Policy and this Order refer to Section B.1.g. of the Policy's Causes of Loss Special Form as the "Water Exclusion."  (*See* Policy 35).

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

> (a) Foundations, walls, floors or paved surfaces;
>
> (b) Basements, whether paved or not; or
>
> (c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

(*Id.* 34–35 (alterations added; bold omitted)).

Subsection (3) of the Water Exclusion is modified by a Sewer or Drain Definition Endorsement, which defines the terms "sewer" and "drain[.]" (*Id.* 49 (alteration added; quotation marks omitted)). "Sewer" is defined as "any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;" while "[d]rain is defined as "any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a 'sewer.'" (*Id.* (alteration added; quotation marks omitted)).

The Policy contains a separate exclusion pertaining to "'Fungus', Wet Rot, Dry Rot [a]nd Bacteria[,]" which provides Defendant "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of 'fungus', wet or dry

rot or bacteria" unless such loss or damage results in a "specified cause of loss[.]"   (*Id.* 36 (alterations added; quotation marks and bold omitted)).  The exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area." (*Id.* 34, 36).  The Policy's "Additional Coverage" section includes limited coverage for loss or damage by "'fungus', wet or dry rot or bacteria" caused by a "'specified cause of loss' other than fire or lightning;" or "[f]lood[.]"   (*Id.* 41 (alterations added; bold omitted)).

The Policy further excludes from coverage "[t]he cost of excavations, grading, backfilling or filling;" and "[u]nderground pipes, flues or drains[.]"   (*Id.* 16 (alterations added)).  The Policy, however, extends the following coverage: "If loss or damage caused by or resulting from covered water or other liquid . . . occurs, [Defendant] will [] pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes." (*Id.* 42 (alterations added)).  Stated differently, coverage for the costs to repair and replace damage to the plumbing system is wholly dependent upon whether the water damage is covered under the Policy.  (*See id.* 16, 42).

***Plaintiffs' Complaint.***   On March 12, 2020, Plaintiffs filed their Complaint against Defendant in state court asserting the Property was damaged by a water event in November 2019.  (*See generally* Compl.).  They sought damages under the Policy "for all covered losses, including . . . repairs, drywall replacement, floor damage, appliances, electric, and cabinetry, in addition to other interior and/or exterior damage to the Property." (*Id.* ¶ 11 (alteration added)).  Plaintiffs asserted claims for breach of contract (Count I) and declaratory relief (Count II).  (*See generally id.*).

Defendant removed the case to this Court asserting diversity jurisdiction (*see generally*

6

Notice of Removal), and shortly thereafter, moved to dismiss the Complaint for failure to state claims for relief under Federal Rules of Civil Procedure 8(a) and 12(b)(6) (*see generally* Def.'s Renewed Mot. to Dismiss Compl. [ECF No. 22]).  On June 16, 2020, the Court dismissed Count II but granted leave to amend.  *See generally Raffell v. Scottsdale Ins. Co.*, No. 20-21719-Civ, 2020 WL 6385503 (S.D. Fla. June 16, 2020).  On June 29, 2020, Plaintiffs filed a Notice of Intent to Proceed with [their] Complaint Under the Breach of Contract Only [ECF No. 33], advising that they were pursuing the breach-of-contract claim only.  (*See generally id.*).

    ***Defendant's Motion***.  Defendant now moves for summary judgment on Count I of Plaintiffs' Complaint, citing multiple Policy exclusions.  (*See generally* Mot.; Reply).

## II.  STANDARD

    Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court draws all reasonable inferences in favor of the party opposing summary judgment.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

    If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case.  *See Blackhawk Yachting, LLC v.*

*Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1); alteration added; quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id*. (alteration added; citations omitted).

## III.   ANALYSIS

"Under Florida law,[5] insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (alteration added). "Ambiguities are construed against the insurer and in favor of coverage." *Id.* "Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous." *Id.* "Because they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. 1st DCA 2011) (citation omitted). But where "a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc.*, 913 So. 2d at 532 (quotation marks and citation omitted); *see also Interline Brands, Inc. v. Chartis*

---

[5] The parties do not raise a conflict-of-laws issue and do not dispute Florida law applies. (*See generally* Mot.; Resp.).

*Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (explaining "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." (quotation marks and citation omitted)).

Defendant insured the Property on an "all-risks" basis.  (*See* Resp. 4).  "An all-risks policy provides coverage for all losses not resulting from misconduct or fraud unless the policy contains a specific provision expressly excluding the loss from coverage."  *Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576, 578 (Fla. 2d DCA 2014) (quotation marks and citation omitted).  "[A]n 'all-risk' policy is not an 'all loss' policy, and this does not extend coverage for every conceivable loss."  *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696–97 (Fla. 2016) (alteration added; quotation marks and citation omitted).

"A plaintiff seeking to recover under an all-risks policy has the burden of proving that a loss occurred to the insured's property while the policy was in force."  *S.O. Beach Corp. v. Great Am. Ins. Co. of N.Y.*, 305 F. Supp. 3d 1359, 1364 (S.D. Fla. 2018) (citation omitted).  "The burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms."  *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018) (quotation marks and citations omitted).  "In short, in all-risk policies . . . construction is governed by the language of the exclusionary provisions."  *Sebo*, 208 So. 3d at 697 (alteration added).

Defendant contends it owes no coverage to Plaintiffs because "it is undisputed that all damage claimed by Plaintiffs . . . resulted only from the deterioration of the drain pipes at the Property, and the Policy clearly excludes coverage for damage to the Property caused by wear and tear, corrosion, or deterioration."   (Mot. 13 (alteration added; quotation marks omitted)).  Defendant maintains that even if the entire claim is not barred by excluded causes such as wear and tear, deterioration, or corrosion, the Water Exclusion entitles it to summary judgment on

Plaintiffs' breach-of-contract claim. (*See id.* 17–19). Plaintiffs insist Defendant's coverage position is incorrect. (*See generally* Resp.). The Court first discusses Defendant's contentions and then turns to Plaintiffs' rebuttal.

To start, the parties do not dispute the Property suffered damage from the "accidental[]" "discharge or overflow of water" as a direct result of "the breaking apart or cracking of the [Property's] plumbing system due to age-related deterioration."[6] (Pls.' SOF ¶¶ 32–33, 35 (alterations added); *see also* Def.'s Reply SOF ¶¶ 32–33, 35). Nor is there any dispute the loss was occasioned by water, or that the occurrence causing the loss was the failed cast iron plumbing system on the premises. (*See* Pls.' SOF ¶¶ 33, 35; Def.'s Reply SOF ¶¶ 33, 35; Compl. ¶ 8). Because Plaintiffs' loss falls within the language of "[w]ater damage" (Policy 43 (alteration added)), the Court's interpretive task is to determine whether the Water Exclusion applies to exclude coverage for the loss (*see id.* 34–36). If it does, the Court must enforce the exclusion as written and exclude coverage; if it does not, summary judgment in Defendant's favor is inappropriate.

The Water Exclusion unambiguously excludes coverage for the damage to the Property. As noted, the Water Exclusion provides Defendant "will not pay for loss or damage caused directly or indirectly by" "[w]ater" or "[w]aterborne material" that "backs up or overflows or is otherwise discharged from a sewer[] [or] drain[.]" (*Id.* 34–35 (alterations added)). The Policy defines "[d]rain" as "any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises . . . to a sewer." (*Id.* 49 (alterations added; quotation marks omitted)). It is undisputed the damage to the Property occurred because water (or waterborne material) either discharged, overflowed, or backed up through deteriorating drain pipes in the plumbing system

---

[6] For purposes of summary judgment, Defendant "does not dispute certain 'facts' asserted by Plaintiffs[.]" (Def.'s Reply SOF 2 n.2 (alteration added)).

and into the premises.[7]   These drain pipes — which were cast iron pipes that carried water or wastewater on the Property to the city sewer system — constitute "drain[s]" (as that term is defined in the Policy).[8]   (*Id.* (alteration added; quotation marks omitted); *see also* Best Decl. 6).   Thus, under the plain language of the Policy, the damage resulted from an excluded cause.

Plaintiffs postulate several reasons why this reading is not correct, but the Court remains unpersuaded.   The Court explains.

Plaintiffs first contend "the language of the Policy guides [the Court's] interpretation of the [l]oss."   (Resp. 8 (alterations added)).   Plaintiffs insist that if a loss meets the definition of "water damage[,]" the Water Exclusion does not apply.   (*Id.* (alteration added; quotation marks

---

[7] To be sure, in Plaintiffs' words: (1) "[i]t is undisputed that there was a plumbing loss on or about November 9, 2019, which caused water damage to the interior of the Property" (Resp. 4 (alteration added)); (2) "[t]here is no dispute that there was an accidental discharge of water as a result of a breaking apart of the plumbing system that is located on the residence premises" (*id.* 6 (alteration added)); and (3) "[i]t is undisputed in our case that the [l]oss was caused by a direct result of the breaking apart or cracking of a plumbing [sic] that is located on the described premises and contains water or steam" (*id.* 7 (alterations added)).   (*See also* Dep. of Yehuda Best (Plaintiffs' expert) [ECF No. 58-3] 73:18–22 (Q: "[T]he damage in this particular building, you're saying all of it was caused by the deteriorated or back-fill conditions of those pipes; is that right?" A: "Yes." (alteration added)); Raffell Decl. ¶ 4 (stating the declarant observed on the date of loss "a discharge of water coming from the plumbing system."); Decl. of Yehuda Best ("Best Decl.") [ECF No. 65-4] 6 (concluding the condition of the "entire sanitary plumbing system" — which consisted of "cast iron pipes" that "drain[] out to the city sewer system" — "prevent[ed] proper drainage and allow[ed] for waste water to rise through slab penetrations causing water damage." (alterations added)); Decl. of Manual Cordoves (Plaintiffs' expert) ("Cordoves Decl.") [ECF No. 65-2] 6 (stating the expert observed upon an initial inspection of the Property "a recent plumbing water supply pipe leak that damaged the interior" and "waste water [that had] back[ed] up onto the interior of the home on multiple occasions" (alterations added)); Pls.' SOF ¶¶ 31–32, 35; *compare* Def.'s SOF ¶¶ 11–21, *with* Pls.' Resp. SOF ¶¶ 11–21).

[8] Plaintiffs make no argument that the damage to the Property was caused by a non-drain (or non-sewer) source (as those terms are defined in the Policy).   (*See generally* Resp.).   Critically, Plaintiffs put forward evidence — and declare it is undisputed — that the origin of the water in the Property came from deteriorated drainpipes in the plumbing system.   (*See* Resp. 4, 6–7; Best Decl. 6; Cordoves Decl. 6).   Either way, "[b]ecause evidence of water [discharging, overflowing, or backing up from a drain is] undisputed and is expressly excluded by the [P]olicy, the entire loss is excluded from coverage due to the anti-concurrent cause provision regardless of any other cause or event contributing concurrently or in any sequence to the loss."   *Sec. First Ins. Co. v. Czelusniak*, -- So. 3d --, 2020 WL 2463762, at *2 (Fla. 3d DCA May 13, 2020) (alterations added; citation omitted); (*see also* Policy 34–35 ("Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.")).

omitted)).  According to Plaintiffs, the following "provision disposes of the entire issue[:]"

> To the extent that accidental discharge or leakage of water falls within the criteria set forth in . . . this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

(*Id.* (alterations added; quoting Policy 43)).

Plaintiffs' attempt to fit their water damage into this exception is unavailing for two reasons.  First, in the preceding paragraph, the Policy states "water damage does not include loss or damage *otherwise excluded under the terms of the Water Exclusion*."  (Policy 43 (emphasis added)).  Plaintiffs' argument is disconnected from the plain language of the Policy.

Second, the provision on which Plaintiffs rely makes clear that "such water is not subject to the *provisions* of the Water Exclusion which *preclude coverage for surface water or water under the surface of the ground*."  (*Id.* (emphasis added)).  Stated differently, the Water Exclusion's provisions that preclude coverage for either surface water (subsection (1) of the Water Exclusion (*see id.* 35)) or water under the surface of the ground (subsection (4) of the Water Exclusion (*see id.*)) do not apply to "accidental discharge or leakage of water [that] falls within the criteria set forth in . . . this definition of 'specified causes of loss,'" (*id.* 43 (alterations added)). Defendant invokes subsection (3) of the Water Exclusion, not subsections (1) or (4).

Plaintiffs next urge the Court to rely on *Cameron v. Scottsdale Insurance Co.*, 726 F. App'x 757 (11th Cir. 2018); and *Cheetham v. Southern Oak Insurance Co.*, 114 So. 3d 257 (Fla. 3d DCA 2013), as both cases involve water exclusion and water-damage coverage clauses.  (*See* Resp. 8–9).  Plaintiffs maintain "[t]he Policy provisions are virtually identical to the policy provisions in *Cameron*[] [and] *Cheetham*[]" and insist *Cameron* is "binding precedent from the Eleventh Circuit on an almost identical set of facts[.]"  (*Id.* 1, 8 (alterations added)).  *Cameron* and *Cheetham* are distinguishable, however.

In *Cameron* and *Cheetham*, the courts interpreted water damage exclusions like the one in this case and determined they only apply to damage caused by water originating from somewhere other than the residence premises' plumbing systems.  *See Cameron*, 726 F. App'x at 762–63; *Cheetham*, 114 So. 3d at 262–63.  Although alluring at first glance, such a reading is untenable under the Policy at issue.

Unlike the policies in *Cameron* and *Cheetham*, the Policy expressly defines "[d]rain" as "any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises . . . to a sewer[,]" establishing that damage caused by water, as used in subsection (3) of the Water Exclusion, includes water carried by drain pipes, channels, or conduits "on or away from" the Property.[9]  (Policy 49 (alterations added; quotations marks omitted); *see also id.* (defining "[s]ewer" as "any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises" (alteration added; quotation marks omitted))).  The addition of the definitions of "drain" and "sewer" — and specifically, the language "on or away from the premises" — to the Water Exclusion is significant and serves to expand its scope, not keep it consistent with *Cameron* and *Cheetham*'s interpretations or narrow it.  The policies in *Cameron* and *Cheetham* are not identical in all material respects to the Policy, and thus, these decisions fail to persuade.[10]

_____

[9] *See Cameron v. Scottsdale Ins. Co.*, No. 16-21704-Civ, 2017 WL 1153863, at *2 (S.D. Fla. Mar. 28, 2017) ("No definition of 'drain' appears in the Policy[.]" (alteration added; citation omitted)); *Cheetham*, 114 So. 3d at 263 (stating its interpretation was consistent with another district court of appeal's decision in a case where the terms "sewer" or "drain" were not defined in the policy (quotation marks and citation omitted)).

[10] Plaintiffs contend — without citing any legal authority — the same analysis applies despite the Policy's definitions of "sewer" and "drain."  (Resp. 10 (quotation marks omitted)).  Rather than address the Policy's definitions of "sewer" and "drain," Plaintiffs propose the Court omit reference to the definitions altogether.  (*See id.*).  This, the Court will not do.

Plaintiffs then request the Court "harmoniz[e] the coverage provisions" because the "'water damage' provision" describes the term "sewer pipe . . . to be located off the [] premises."  (*Id.* (alterations added; quotation marks omitted)).  Plaintiffs' contentions are unhelpful and unconvincing.  The Court will not (and

As a last resort, Plaintiffs state the Policy provisions are ambiguous (doing so after declaring on numerous occasions the Policy is unambiguous). (*See* Resp. 7–8, 10). Quite simply, there is no ambiguity in the Water Exclusion. It clearly excludes from coverage the damages for which Plaintiffs seek coverage under the Policy: water damage caused by a backup, overflow, or discharge from a drain on the premises. The Court will not create ambiguity where none exists.

In short, the language of the Policy is plain and must be enforced. Summary judgment will be entered in Defendant's favor.[11]

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant, Scottsdale Insurance Company's Motion for Summary Judgment **[ECF No. 47]** is **GRANTED**. Final judgment will issue by separate order. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Miami, Florida, this 8th day of January, 2021.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

cannot) do what Plaintiffs request — rewrite the contract and give an expressly defined term a more restrictive meaning. *See Taurus Holdings, Inc.*, 913 So. 2d at 532 (stating "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." (quotation marks and citations omitted)).

[11] Because the cause of loss is not a "specified cause of loss" under the "'Fungus', Wet Rot, Dry Rot [a]nd Bacteria" provision, the Policy fails to provide coverage for Plaintiffs' mold damage. (Policy 36 (alterations added; quotation marks and bold omitted); *see also* Resp. 12 (conceding the relevant provision only applies if the loss is a "specified cause of loss" (quotation marks omitted))). Similarly, because coverage is not triggered for Plaintiffs' water damage, the Policy does not cover the costs to tear out and repair portions of the Property necessary to access the deteriorated parts of the plumbing system that caused the loss. (*See* Policy 16, 42; Resp. 12–13).